411 So.2d 1074 (1982)
STATE of Louisiana
v.
Anthony HATHAWAY.
No. 80-KA-2516.
Supreme Court of Louisiana.
March 12, 1982.
*1075 William J. Guste, Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns and Richard Petri, Asst. Dist. Attys., for plaintiff-appellee.
Philip R. Johnson, Metairie, George Escher, New Orleans, for defendant-appellant.
CARTER, Associate Justice Ad Hoc.[*]
Defendant was charged by a Bill of Information with possession of a firearm by a person convicted of a felony, in violation of La.R.S. 14:95.1. He first pleaded not guilty to the charge but after commencement of jury selection was allowed to withdraw that *1076 plea and to plead guilty as charged, reserving his right to appeal the adverse ruling on his motion to suppress the evidence only. The plea was accompanied by the usual Boykin Examination, and the record indicates that defendant understood and waived his right against self incrimination, his right to trial by jury, his right to confront witnesses against him, and his right to appeal.[1]
On the basis of his guilty plea, defendant was sentenced to serve four years at hard labor. No objection was made during the proceedings. On appeal, defendant urges two assignments of error. Defendant's first assignment of error is based on the allegation that there is error patent on the face of the record in that the Bill of Information charged no crime since the wording of the statute under which he is charged exempts him from criminal liability. Defendant's second assignment of error is that it was error for the trial court to deny his motion to suppress the evidence based on the contention that the gun was seized incident to an unlawful arrest.
At the hearing on the motion to suppress, Officer Forrest Bethay of the New Orleans Police Department testified that on March 30, 1979, around 6:00 P.M., he and Officer Robert Barrerre received a telephone call from a confidential informant who had supplied information which had led to arrests and convictions on two prior occasions. The confidential informant told the officers that one Joseph Woods, a known narcotics user would be delivering a quantity of preludins to a residence in the 1200 Block of South White Street. It was also stated that Woods would be carrying a revolver. Officers Bethay and Barrerre proceeded immediately to the area of South White Street and upon their arrival observed Joseph Woods talking on Broad Street at the intersection of Clio. Bethay who was in plain clothes got underneath a truck and watched Woods walk down Clio Street. Woods was turning around and looking up and down the street as to determine if anyone was watching his actions.
Bethay returned to the unmarked police car, advised Officer Barrerre what he had observed, then drove immediately to 1229 South White Street. They observed Joseph Woods, Vincent Vantress, and defendant Anthony Hathaway "standing on the sidewalk." Officer Bethay had known both Woods and Vincent Vantress as narcotics users from his own personal knowledge obtained from past investigations involving both Woods and Vantress. Officer Bethay had never seen nor did he know Anthony Hathaway before this incident. As they alighted from their vehicle, they identified themselves in the following manner, "Police officers, freeze." Hathaway and Vantress immediately ran into a residence at 1229 South White, which was presumed to be Hathaway's. Bethay pursued Hathaway and Vantress. Upon reaching the front door, Officer Bethay discovered the door to be locked and kicked it open. Upon entering the room, he observed Hathaway standing in the kitchen with a revolver in his hand pointing in Officer Bethay's direction. Bethay immediately "went against the wall" and "ordered Mr. Hathaway to throw down the gun." Hathaway threw the gun to the floor and put his hands in the air. Officer Bethay, hearing the toilet flush, immediately looked in the bathroom and saw Vantress standing with a revolver in his hand. Bethay disarmed Vantress and removed a syringe from the bowl of the toilet.
Defendant Hathaway was thereafter charged with being a convicted felon in possession of a firearm, having previously been convicted of murder and attempted murder in 1964.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant's first assignment of error is that there is error patent on the face of the record, in that the Bill of Information charges no crime because the wording of *1077 the statute under which he is charged exempts him from criminal liability.
Defendant is charged under R.S. 14:95.1 which reads in part as follows:
"A. It is unlawful for any person who has been convicted of first or second degree murder ... to possess a firearm or carry a concealed weapon.
* * * * * *
C. Except as otherwise specifically provided, this section shall not apply to the following cases:
(1) The provisions of this section ... shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence ..."
Defendant urged in his original motion to quash that R.S. 14:95.1 was too vague, general, and indefinite in its language, pretermitting the defendant's ability to know what he had to defend against. He also contended that there is no objective standard that would allow the defendant to know which acts allegedly proscribed are illegal or innocent. He also contends that the correct interpretation of Section C of R.S. 14:95.1 would be that the defendant must have committed an additional intervening felony within a ten year period after serving his sentence on the first enumerated felony, and secondly, there was no evidence in the record to show when he was relieved of the ten year liability emanating from R.S. 14:95.1.
These arguments are without merit. This Court has made clear its interpretation of R.S. 14:95.1 in numerous cases. State v. Sanders, 337 So.2d 1131 (La.1976); See also State v. Blanchard, 374 So.2d 1248 (La. 1979); State v. Amos, 343 So.2d 166 (La. 1977). Defendant must only have one prior conviction of one of the enumerated crimes to fall within the perimeters of R.S. 14:95.1.
Defendant's second contention in this assignment of error is that there was no evidence in the record to show when he was relieved of the ten year liability emanating from R.S. 14:95.1. The Bill of Information only provides that "the said Anthony Hathaway, having previously been convicted of a felony, to wit: Murder in case No. 183-078 Section "C" of the docket of the Criminal District Court of the Parish of Orleans, State of Louisiana..." Defendant was convicted of murder and attempted murder in 1964. However, as part of defendant's Boykinization[2] it was stated by defendant's counsel ".. at this point I have consulted with my client and he is desirous of and has indicated to me that he would like to change his plea of not guilty and enter a plea of guilty to the charge, reserving his right to any appeal under State v. Crosby, the Motion to Suppress."[3]
Certainly in a trial of this offense the State must prove beyond a reasonable doubt not only that a convicted felon possessed a firearm, but the date of completion of the punishment as well. State v. William, 366 So.2d 1369 (La.1978). However, defendant has hereby forfeited his right to appeal all non-jurisdictional defects by changing his plea to guilty and reserving his right to appeal only on the adverse ruling on his motion to suppress. Cf. State v. Crosby, 338 So.2d 584 (La.1976). A defendant's plea of guilty constitutes an intelligent waiver of appellate review of the merits of the prosecution's case against him. State v. Bell, 332 So.2d 222 (La.1976).
Even if this Court considered defendant's assignment of error that the state must prove the date of completion of punishment (which is not part of the Motion to Suppress), by entering a guilty plea after commencement of trial, the State was not afforded the opportunity to carry this burden. It is interesting to note that at the Preliminary Hearing conducted on April 4, 1979, the following occurred:
BY DEFENSE ATTORNEY OLGO KOGOS:
Your Honor, at this time, we wish to stipulate on behalf of defendant Woods,

*1078 Vantress and Page that they have prior felony convictions.
BY THE STATE:
Which fall under the Provisions of 95.1?
BY DEFENSE ATTORNEY OLGA KOGOS:
Yes.
BY THE STATE:
Your Honor, it is my understanding that there has been a stipulation as to Hathaway.
BY DEFENSE ATTORNEY CAUFIELD:
We stipulate to that, also, your Honor. We also would like to state that this is no way submitting to or admitting that they are guilty of the 95.1.
BY THE COURT:
You just stipulated that they do have prior convictions which would make them subject to provisions of 95.1?
BY DEFENSE ATTORNEY OLGO KOGOS:
Yes, your Honor.
BY DEFENSE ATTORNEY CAUFIELD:
Yes, your Honor.[4]
Clearly, if this Court were to consider this contention (in the absence of a completed transcript of trial) we would have to look to the entire record including the exerpt from the Preliminary Hearing. Defendant's contention is without merit.
For the above reasons, the various contentions asserted in assignment of error number one are unsupported and assignment of error number one is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, the defendant contends that the gun was seized as a result of an unlawful arrest. Defendant contends that the actions of the police constituted an unlawful stop of Hathaway, a warrantless search of his home and a warrantless arrest of Hathaway, all without reasonable or probable cause.
Code of Criminal Procedure Art. No. 213 provides that a police officer may, without a warrant, arrest a person when the officer has reasonable cause to believe that the person to be arrested has committed an offense. Upon his entry into the apartment on South White Street, Officer Bethay observed Anthony Hathaway point a gun at him which constituted an assault upon the officer. This clearly would justify a warrantless arrest if there was no illegality in the events leading up to the arrest.
At this point, we must address the issue as to whether or not the officer's entry into Hathaway's apartment was a lawful entry. It is patently unlawful for an entry of private premises to take place without a warrant, unless the search is justified under one of the narrow exceptions to the rule requiring the use of a search warrant. Police entry into a residence in "hot pursuit" and under "exigent circumstances" are exceptions to the warrant rule. State v. Franklin, 353 So.2d 1315 (La.1978) conviction affirmed; 362 So.2d 1383 (La.1978).
However, for this exception to apply the officer must have had probable cause to arrest a person before pursuing him, in order to justify the entry.
Since both Hathaway and Vantress fled to the apartment, it would not be necessary to have sufficient probable cause to arrest both. It would suffice only to have probable cause to pursue either of the two in order to justify the entry. A similar circumstance presented itself in State v. Abadie, 390 So.2d 517 (La.1980), where one individual fled into an apartment. Officers entered in hot pursuit and arrested several other persons present.
An arrest by a police officer can be made without a warrant only if he has reasonable cause to believe that the person to be arrested has committed an offense.
*1079 Code of Criminal Procedure Article No. 213. Reasonable cause for an arrest exists when facts and circumstances known to the arresting officer and of which he has reasonable trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Edwards, 375 So.2d 1365 (La.1979). These encounters must be carefully scrutinized to determine if there is in fact probable cause. Police officers can not actively create "street encounters" unless they have knowledge of suspicious facts and circumstances sufficient to allow them to infringe upon the suspect's right to be free from government interference. State v. Saia, 302 So.2d 869 (La.1974).
The officers obtained a tip from a reliable informant that Joseph Woods, a known narcotic user, was about to make a sale on the 1200 block of South White Street. An informant's tip can provide a police officer with reasonable cause to detain and question a person suspected of criminal activity. State v. Bolden, 380 So.2d 40 (La.1980). In determining whether reasonable cause for an investigatory stop based upon an informant's tip exists, reliability of both informant and his information must be satisfactorily demonstrated, or, if the tip is inadequate under the standard, it may be deemed sufficiently trustworthy on the basis of corroboration by independent sources. State v. Brown, 370 So.2d 347 (La.1979).
Louisiana Code of Criminal Procedure Article 215.1, provides that a law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or misdemeanor and may demand of him his name, address and explanation of his actions. Reasonable cause for an investigatory stop or detention is something less than probable cause, but requires the detaining officer to have articulable knowledge of particular facts sufficiently reasonable to suspect the detained person of criminal activity. State v. Edsall 385 So.2d 207 (La.1980). The observation on the 1200 Block of South White Street showed Joseph Woods moving down the street in a furtive manner, coupled with the reliable informant's tip and the fact that Woods met Vincent Vantress, another known narcotic user, is sufficient to create an articulable suspicion to stop and detain Woods and Vantress.
When the officer yelled "Police officer, freeze", Vantress and the defendant Hathaway fled the scene. The fact that a person runs or flees does not in itself and of itself establish probable cause. Flight does not always indicate guilt; it may result from fear and possibly other causes. Even where flight does reasonably appear designed to avoid apprehension, reasonable cause will not arise unless flight, combined with other information upon which officers are entitled to rely, would indicate to a reasonable mind that the combination of circumstances is inconsistent with any innocent pursuit. State v. Franklin, 353 So.2d 1315 (La.1978) conviction affirmed, 362 So.2d 1383 (La.1978). In the instant case, with the information the officers had at the time they made their presence known, the flight of Vantress and Hathaway was sufficient to ripen the reasonable suspicion to detain into probable cause to arrest Vantress.
Probable cause alone does not justify the entry into an area otherwise protected by the Fourth Amendment of the United States Constitution and the Louisiana Constitution, Article 1, Section 5. There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances. State v. Rudolph, 369 So.2d 1320 (La.1979). Exigent circumstances are exceptional circumstances which when coupled with probable cause justify an entry into a "protected" area that, without those exceptional circumstances, would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence. Rudolph Supra, Abadie Supra. In the case before us, when Vantress and Hathaway fled, the justification for the *1080 warrantless entry into Hathaway's apartment occurred when the police officers were confronted with a situation on which prompt action was necessary to prevent the flight of the alerted suspect Vantress and the possible destruction of evidence, narcotics. Therefore, the above warrantless entry into the apartment was justified, thereby making the warrantless arrest of Hathaway clearly proper. As previously discussed, the officer, once legally in the residence, clearly had probable cause to arrest Hathaway without a warrant since Hathaway was pointing a gun at him.
The gun was legally seized incident to a lawful arrest and this assignment of error by the defendant is without merit.
AFFIRMED.
DENNIS, J., concurs.
NOTES
[*] Judges Melvin A. Shortess, Burrell J. Carter and Felix N. Savoie, Jr. of the First Circuit Court of Appeal participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon and Associate Justices Calogero, Marcus and Dennis.
[1] Although in Boykinization, defendant stated that he waived his right to appeal R. p. 38, it is clear that he reserved his right to "... an appeal under State v. Crosby [388 So.2d 584 (La.)], the Motion to Suppress."
[2] Record, Page 36.
[3] Underlining by the Court.
[4] Record, pages 61 and 62.