CURRAULT, Judge.
The defendant-appellant, Van A. Maness, was charged in a Petition for Delinquency with violation of R.S. 14:69; Receiving Stolen Things. This appeal arises from an adjudication of delinquency by the Juvenile Court for the Parish of Jefferson against the defendant. We affirm.
On Monday, February 22, 1982, a residence in Gretna, Louisiana was burglarized and approximately $17,000.00 in jewelry was stolen. On the morning of Wednesday, February 24,1982, John Barrileaux, a juvenile, was arrested for possession of a diamond stud earring which had been stolen on Monday. The defendant, Van Maness, was brought with Barrileaux to the police station, but was not arrested. Both boys were released and returned to Van Maness’ home. Later that afternoon, Detective Charles Heintz received a telephone call from an anonymous informant, who advised the officer that John Barrileaux and another white male by the name of Van were moving some of the property taken in the burglary. According to the informant, the two subjects were in the area of the 1100 block of Derbigny Street. Detective Dennis Dunn, who had known the defendant for some time, agreed to assist Detective Heintz. Upon arrival at the corner of Tenth Street and Derbigny, Detective Dunn was able to observe the two subjects about a block and a half away walking in his direction. The defendant, Van Maness, was observed to be carrying a brown paper bag. After watching them for a minute, the officer stopped the young men. After brief acknowledgements, the officer looked into the bag and discovered some clothing and the bulk of the stolen jewelry at the bottom of the bag. Detective Heintz was notified and upon his arrival, both subjects were frisked and Barrileaux was found to have more of the stolen property in his pockets. The jewelry was identified by the victim as being that stolen from his residence two days before.
The defendant-appellant, Van Maness, age 15, was arrested along with the other juvenile, for possession of the stolen jewelry. He was charged on March 1, 1982, in a Petition for Delinquency with violation of R.S. 14:69; Receiving Stolen Things.
The defense filed a Motion to Suppress the Evidence and at the hearing on April 12,1982, in Section B of the Juvenile Court for the Parish of Jefferson, the Honorable Thomas P. McGee, Judge, denied the motion. At trial the following day, the court found that the evidence warranted the requested adjudication and accordingly in the Judgment of Disposition the defendant was adjudicated a delinquent.
A pre-sentence investigation was ordered and on May 6, 1982, the defendant was assigned to the custody of the Louisiana Training Institute for a period of three (3) years. The defendant was remanded to the L. Robert Rivarde Memorial Home, pending the outcome of his appeal which was filed on September 21, 1982.
ASSIGNMENT OF ERROR NUMBER 1
Appellant asserts the trial court committed reversible error when it denied his Motion to Suppress Evidence, which appellant declares was illegally seized as the result of an unconstitutional and illegal search of the defendant-appellant’s person and effects. Therefore, he argues his motion should have been sustained.
*145 The defense submits that the search of the brown paper bag, carried by the defendant, was illegally conducted and thus the jewelry inside of the bag was illegally seized. The defense asserts that Detective Dunn did not have reasonable cause, as required by La.C.Cr.P. art. 215.1, for his initial stop of Maness and Barrileaux and consequently the seizure of the bag and discovery of the jewelry was irredeemably tainted by the illegal stop. ■ Additionally, the defense asserts that the anonymous telephone tip, the sole basis for the investigatory stop, could not be shown to be of a reliable nature and thereby failed to meet the test set forth in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); to establish probable cause for a warrantless search.
The defense argues further that, if indeed the officer had reasonable cause for an investigatory stop, he was lacking in probable cause for the warrantless arrest and subsequent search of the defendant. While recognizing that an exception is made for a pat-down or frisk of the defendant, if the arresting officer has a reasonable fear for his safety, under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the defense points out that the arresting officer never once suggested that the young men presented any threat to his safety. Testimony revealed that the subjects were patted down only after the discovery of the stolen property. The search of the paper bag is construed by the defense to have been merely an exploratory search for evidence of criminality.
The thrust of the defense’s argument is that the search of the paper bag does not fall within any of the exceptions to the warrant requirement, and therefore, the trial court was in error in not granting the Motion to Suppress the Evidence.
The state maintains that the search of the paper bag was valid in that the officers had reasonable cause for the investigatory stop. Furthermore, the state suggests that the search was consented to by the defendant and thereby falls squarely into one of the exceptions to the warrant requirements of the search.
The state cites State v. Bailey, 410 So.2d 1123 (La.1982), as authority for a temporary seizure of a subject reasonably believed to be engaged in criminal activity. If the officers have reasonable cause for such a seizure, they may also detain any property found until ownership can be determined.
It further suggested that although the veracity of the anonymous tip could not be determined, the investigating officers had already dealt with the young men earlier that day. One of the subjects had been found in possession of stolen property (an earring). State v. Hathaway, 411 So.2d 1074 (La.1982), held that if the reliability of the informant and/or the information cannot be verified, it can be elevated on the basis of corroboration by independent sources. The state asserts that the officers had articulable facts relative to the identity of the subjects and their possible connection with the stolen property.
Moreover, the state points out that the search was consented to by the defendant. The detective testified that he asked the defendant for the bag and it was handed to him. The defendant testified that he made no attempt to conceal the bag or its contents from the officer. It should be noted that the defendant was attempting to prove that he had no knowledge of the contents of the bag and therefore had no reason to conceal it.
The state’s argument is centered on the premise that the officers had reasonable cause to stop the defendant and that the defendant gave his consent to the officers to search the bag.
A warrantless search of a protected area is per se, unreasonable unless it falls within one of the specifically established exceptions. State v. Chapman, 410 So.2d 689 (La.1981). Two of these exceptions could be applicable to this fact situation: probable cause to arrest coupled with exigent circumstances and/or consent by the defendant to the search. La.C.Cr.P. art. 703(D), Motion to Suppress, states that the burden of proof is on the state to prove the *146 admissibility of any evidence seized without a warrant.
This court perceives the primary issue to be whether the arresting officer had probable cause for an arrest of the defendant coupled with exigent circumstances.
State v. Brown, 370 So.2d 547, 551 (La.1979), dealt with airport officers who had received an anonymous tip relative to a suspect who was simultaneously found to fit the “Detroit Profile”.[1] The tipster gave a very complete and particularized description of the suspect. The Brown decision determined that even if the tip could not be independently proven to be reliable, “... it may be deemed sufficiently trustworthy on the basis of corroboration by independent sources.” It should be noted, however, that this tip and the independent information (the Detroit Profile) satisfied the prerequisite for an investigatory stop. An arrest was not made in the Brown case until more information was obtained by the airport officials.
In this case, the officer’s partner had received an anonymous tip that the defendant, Van Maness, and John Barrileaux were transporting stolen goods and gave their approximate location. By itself, in our opinion, the tip was insufficient cause to arrest the defendant as it could not be proven to be reliable.
However, John Barrileaux had been arrested earlier that day in connection with the jewelry burglary. He had been in the company of the defendant, Van Maness, at that time. Both boys were sent home. When the officers received the tip that the defendant and Barrileaux were transporting the stolen property, the officers were correct in following up this lead in their investigation.
The court in State v. Buckley, 426 So.2d 103 (La.1983), held that information obtained from informants, if proven to be trustworthy, contributes to the probable cause required for an arrest without a warrant. In the instant case, the anonymous tip could not be deemed reliable at the outset, however, it could be added to the information already known by the officer to cause him to investigate further. When the tip was actually corroborated by the observations of the officer, sufficient facts then existed to effect a lawful arrest. Buckley, supra, held that “[pjrobable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. [citations omitted]”
In State v. Billiot, 370 So.2d 539, 543 (La.1979), the court held that;
Probable cause is not an absolute cause. Actions of lawmen,- therefore, may be supported by less evidence than would justify a conviction. The strength of the requisite probable cause varies with the magnitude of the intrusion and the alternatives available to the peace officer. In the first instance the determination of probable cause is a matter for the trial judge depending, as it often does, upon factual determinations and the credibility of witnesses.
The suspects were found walking in the immediate area that the informant had said they would be. Furthermore, as Barrileaux had been wearing a piece of the stolen property earlier, the officers now had probable cause to believe that the suspects had possession of the remainder of the haul in the brown paper bag.
State v. Abadie, 390 So.2d 517, 520 (La.1980), held that;
It has long been recognized that police acting with probable cause may effect warrantless entries to search and arrest when confronted with a situation, such as here, in which prompt action is necessary to prevent the flight of the alerted suspects and possible destruction or removal of evidence. Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).
*147 The fact situation in State v. Hathaway, supra, dealt with two suspects who had apparently just consumated an illegal drug transaction. The police ordered the suspects to stop and the suspects fled the scene and ran into a nearby residence. The officers kicked down the locked door and observed the defendant pointing a gun at him. He was subsequently disarmed and placed under arrest. In Hathaway, supra, at 1079, the court held;
Probable cause alone does not justify the entry into an area otherwise protected by the Fourth Amendment of the United States Constitution and the Louisiana Constitution, Article 1, Section 5. There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances.
The Hathaway decision held that prompt action on the part of the officers was necessary to prevent the flight of the suspects and the possible destruction of the evidence. The court consequently found that the war-rantless entry was justified.
In this case, the officers received a call stating that the suspects were walking in a particular area and were in possession of the stolen property. Time was of the essence, as the boys were mobile and the evidence was such that it could be disposed of easily.
It could be argued that the officers should have attempted to obtain a search warrant prior to arresting the suspects and searching the paper bag, but the location given was not a fixed structure which could be surveilled. The suspects were on the street and moving the property. The officers had to rush to locate the suspects on the street and could have very easily missed them. The exception of exigent circumstances concomitant with probable cause would most certainly apply to this particular fact situation.
A second exception to a warrantless search is the consent of the party having control over the object or area searched. State v. Littleton, 407 So.2d 1208 (La.1981). The state, however, had the burden of proving that the consent was freely and voluntarily given under the totality of the circumstances. State v. Ludwig, 423 So.2d 1073 (La.1982).
The holding in State v. Dunbar, 356 So.2d 956, 961 (La.1978), restated the test for the existence of consent as “[qjuestions of consent are issues of fact, dealing as they do with credibility, [citations omitted] The determination of the trial judge, who has the opportunity to hear and observe the witnesses, is entitled to great weight on review.”
At the motion hearing, Detective Dunn testified that he “took the bag” out of the defendant’s hands. At the trial, the following day, the officer testified that “[a]t that time, I asked for the bag. He handed me the bag....” On cross-examination, the defense counsel reviewed this conflicting testimony and requested that the witness clarify his previous statements. The officer replied, “I don’t believe I testified I ‘yanked’ something out of a person’s hand. I don’t believe I testified to that.”
The defendant, Van Maness, testified at the motion hearing that “[h]e asked me what was in the bag. I said, T think clothes.’ He grabbed the bag out my hand and took the stuff off the top.” The defendant further testified that he did not give the officer requisite permission to look in the bag. The defendant stated on re-direct examination at the trial that he did not attempt to conceal the contents of the bag from the officer when he was arrested. Barrileaux testified that “... one drove up and asked Van to give him the bag and Van gave him the bag.” Later in his testimony, Barrileaux stated, “[a]nd when the cops asked him what it was, he told them, ‘clothes’, you know, and he said, ‘Well, let me see the bag.’ Van gave him the bag....”
The police officer gave somewhat conflicting testimony, but recanted his initial phraseology upon a request for clarification. Barrileaux’s testimony served to impeach previous statements he had made and the defendant’s testimony (as to other matters) was also in dispute. The court had to de *148 termine the truth of the situation from these various and divergent statements.
It is further noted that any consent given must be viewed within the totality of the circumstances. The possibility of unspoken duress or coercion existed when the teenage subjects were confronted by the police officer. Although it was not suggested at trial nor in the briefs, this potential for abuse cannot be overlooked. This is a question of fact to be determined by the trial court.
The argument presented by the state, that the search was consented to by the defendant is arguable, but unsatisfactory due to the unsettling nature of the evidence.
The legal exception to warrantless searches of probable cause to arrest coupled with the mitigating exigent circumstances is applicable to the particular fact situation. The police officers acted appropriately in searching the paper bag, and the stolen jewelry was properly entered into evidence.
ASSIGNMENT OF ERROR NUMBER 2
Appellant asserts that the trial court erred in denying the defendant’s Motion for a Directed Verdict. Appellant additionally argues the trial court further erred in finding the defendant guilty of the crime of Receiving Stolen Things, which ruling and judgment appellant contends was inconsistent with the evidence.
The defense bases its argument for overturning the verdict of guilty on two main points: the incredulousness of the state’s witness, John Barrileaux, and the incorrect application of the law relative to Receiving Stolen Things.
John Barrileaux incriminated the defendant in the original burglary. Barrileaux had previously lied about how he had come to be in possession of the earring. He was admittedly chemically dependant on drugs. The defense submits that this single witness’ testimony was insufficient to find the defendant delinquent.
As other evidence was introduced, the court’s decision to find the defendant guilty was not based exclusively on this suspect’s testimony. The paper bag containing the jewelry was in the defendant’s possession when the officer discovered the stolen property. The defendant maintains that he was holding the bag for just a few seconds, as Barrileaux was lighting a cigarette. Detective Dunn, however, testified that he observed the two subjects walking in his direction for about a block and a half, prior to his intervention. During this time, the defendant had exclusive possession of the bag. According to the officer, there was no transference of the bag between the suspects.
The jewelry recovered was identified by its owner as being stolen in a burglary of his residence two days before it was found in the defendant’s possession.
The defense asserts that, as the evidence presented was unreliable and suspect, the court erred in finding of a verdict of guilty. The standard of review of sufficiency of the evidence, as set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is that the evidence must be viewed in a light most favorable to the prosecution. State v. Fuller, 418 So.2d 591 (La.1982). Using this standard, it is suggested that the essential elements of the crime of receiving stolen things have been proven beyond a reasonable doubt.
The defense’s second contention is that the defendant was incorrectly charged with the violation of La.R.S. 14:69, Receiving Stolen Things. Two sub-issues are presented for review; that of double jeopardy and failure to prove transference.
The defense cites State v. Robertson, 386 So.2d 906 (La.1980), as authority for the legal theory that a defendant cannot be both guilty of burglary and of receiving stolen things. Barrileaux’s testimony, if it is to be believed, implicated the defendant in the burglary. If the defendant is guilty of the burglary, he could not be found guilty of receiving. Consequently, the protection from double jeopardy would attach.
State v. Vincent, 387 So.2d 1097, 1101 (La.1980), considered the issue of double jeopardy in a prosecution for burglary *149 and receiving stolen things. Applying the distinct facts test, the court found that the two crimes are not the same offense as each has different elements to be proven,
Simple burglary requires proof of an unauthorized entry with intent to commit a felony or any theft therein. Receiving stolen things does not require this proof. Conversely, receiving stolen things requires proof that the thing was the subject of a robbery or a theft; simple burglary does not require this proof. Hence, the two crimes are not the same offense.
Consequently, prosecution for both is permitted without violation of the double jeopardy protection. State v. Louisiana In the Interest of Hotard, 369 So.2d 232 (La.1979), affirmed the adjudication of a juvenile as delinquent upon being found guilty of simple burglary and receiving stolen things.
Robertson, supra, can be distinguished as the defendant had already been convicted of armed robbery. The court held that he could not be tried a second time on the charge of receiving stolen things as the thing was the object of the armed robbery.
The defense further suggests that the charge of receiving stolen things implies a transfer of the items to the defendant from a third person. As Barrileaux had testified that the defendant had stolen jewelry in the first place, he could not have “received” the property from himself.
In response to the defense’s assertion that a transfer must be shown to prove the crime, a review of the article is in order. La.R.S. 14:69, provides in pertinent part;
Receiving stolen things is the intentional procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
Transfer of the stolen item is not an essential element crime. The defendant was found to have knowingly concealed the stolen jewelry. State v. Russell, 397 So.2d 1319, 1322 (La.1981), held that mere possession of the stolen property does not give rise to a presumption that the possessor was aware of the fact that it was stolen. Evidence of this awareness must be introduced to prove the crime. The Russell decision was hinged on the fact that the defendants had brought a stolen dump truck and bulldozer from Tennessee to the New Orleans Metropolitan area. The court found concealment in that “the stolen property was handled in such a manner that would throw the owner off his guard in his search for it.” Van Maness was carrying jewelry valued at almost $17,000.00 in a brown paper bag covered over with dirty clothes. The circumstances of such a large amount of jewelry would indicate that the defendant had good reason to believe that it had been stolen. This assignment lacks merit.
Therefore, for the reasons set forth above, we affirm the decision of the juvenile court adjudicating the defendant a delinquent in violation of R.S. 14:69.
AFFIRMED.

. The elements of the Detroit Profile; set out in United States v. Ballard, 573 F.2d 913 (5th Cir.1978), are thirteen items which assist federal drug enforcement agents in recognizing narcotics couriers.